IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MESSER-BOWERS COMPANY,<br><br>Defendant. | 8:24CV295<br><br>MEMORANDUM AND ORDER |

Plaintiff Berkshire Hathaway Homestate Insurance Company ("Berkshire") is an insurance company based in Omaha, Nebraska. On July 24, 2024, Berkshire brought this action (Filing No. 1) against defendant Messer-Bowers Company ("Messer-Bowers"), an Oklahoma insurance agency. The suit is based on an Agency Agreement (the "Agreement") the parties entered into in April 2016.

In its capacity as an insurance agency, Messer-Bowers applied to Berkshire for insurance on behalf Don's Doors LLC ("Don's Doors") in April 2020. The policy sought was for Don's Doors's commercial property located in Enid, Oklahoma (the "property").

According to Berkshire, Messer-Bowers erroneously represented that the property "contained a 'P-2' protective safeguard, which refers to a fire alarm that is either connected to a central station, or reports to a public or private fire alarm station." Based on the information Messer-Bowers provided, Berkshire issued a commercial property insurance policy (the "policy") to Don's Doors for the property. That policy also "included a protective safeguard endorsement requiring Don's Doors to maintain a P-2 protective safeguard."

Berkshire renewed the policy, which extended coverage through April 2023. Pursuant to the Agreement, Messer-Bowers received commissions from Berkshire for the

policy and subsequent renewals. The policies issued to Don's Doors explained that a loss may not be covered should the company fail to maintain working protective safeguards on the property.

On June 26, 2022, a fire broke out at the property. The next day, Don's Doors submitted a Property Loss Notice to Berkshire seeking coverage for the extensive damage caused by the fire. In the investigation that followed, Berkshire discovered the property did not have a P-2 protective safeguard. According to Berkshire, Messer-Bowers later admitted that Don's Doors never actually confirmed the property had the requisite fire alarm.

Messer-Bowers insisted that Berkshire still cover the damage. Berkshire claims Messer-Bowers indicated that litigation would ensue if Berkshire did not pay. Based on those statements, Berkshire ultimately paid Don's Doors's property-damage claim despite its belief that coverage was excluded under the policy. The payment totaled $1,050,000, the policy's coverage limit.

Berkshire now sues Messer-Bowers to recover that amount. Its complaint sets forth claims for (1) breach of contract, (2) unjust enrichment, and (3) equitable indemnity. It relies on an indemnification provision in the Agreement providing the following:

> [Messer-Bowers] shall defend, indemnify and hold harmless [Berkshire], and its employees, officers, directors, shareholders, representatives and agents, from, against and for any and all claims, suits, actions, losses, damages (including compensatory, exemplary and punitive damages), fines, penalties liabilities, judgments and settlements, including reasonable costs, expenses and attorney fees[], based upon, relating to or arising out of, directly or indirectly, in whole or in part, any act, error or omission of [Messer-Bowers] or its employees, officers, partners, members, directors, shareholders, representatives or agents, in connection with fulfilling, complying with, or carrying out [Messer-Bowers's] obligations and duties under this Agreement or relevant federal state or local law or otherwise in

2

connection with the relationship created between [Messer-Bowers] and [Berkshire] by the terms of this Agreement, except to the extent that [Berkshire] caused or contributed to such act, error or omission.

On November 11, 2024, Messer-Bowers moved (Filing No. 7) to compel arbitration and dismiss Berkshire's complaint. It cited to the Agreement's arbitration provision, which stated,

[Berkshire] and [Messer-Bowers] agree that disputes between them arising out of this Agreement and related to the amount of commission or other monies owed to [Messer-Bowers] by [Berkshire] shall be settled by binding arbitration pursuant to the procedures and rules set forth by the American Arbitration Association ("AAA").

In Messer-Bowers's view, the "broad language" of that provision "covers disputes that arise from the contractual relationship" (Filing No. 8). Quoting *Unison Co., Ltd. v. Juhl Energy Development, Inc.*, 789 F.3d 816, 818 (8th Cir. 2015), Messer-Bowers explains that means a dispute must "simply touch matters covered by the arbitration provision" to compel arbitration. It further asserts that the clause "and related to the amount of commission or other monies owed" does not limit the arbitrable matters.

Berkshire disagrees. It opposed (Filing No. 12) Messer-Bowers's motion, arguing the arbitration provision's "plain terms" limits it to "disputes over 'the amount of commission or other monies owed.'" Along those lines, Berkshire asserts "for a dispute to be subject to arbitration, it must both: (1) arise out of the agency agreement, and (2) relate to the amount of commission or other monies [Berkshire] allegedly owes to Messer-Bowers." It also argues the provision is narrow, meaning the arbitration provision may not be applied to claims "collateral to the agreement containing the arbitration clause." *United Steelworkers of Am. v. Duluth Clinic, Ltd.*, 413 F.3d 786, 789 (8th Cir. 2005) (quoting *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d

619, 621 (8th Cir. 1997)). Berkshire asserts the issues presented by its claims in this case are "entirely separate from the issues the parties actually agreed to arbitrate."

In a February 28, 2025, Memorandum and Order (Filing No. 17), the magistrate judge granted Messer-Bowers's motion. *See* 28 U.S.C. § 636(b)(1) (permitting a magistrate judge to "hear and determine any [nondispositive] pretrial matter" and submit "proposed findings of fact and recommendations for the disposition" of a dispositive matter); *see also* Fed. R. Civ. P. 72. She reasoned the arbitration clause could be reasonably interpreted in "at least two ways," including as broadly "encompass[ing] disputes between the parties 'arising out of' the Agreement." The magistrate judge further found Berkshire's allegations "clearly 'touch' the matters covered by the arbitration provision when the claims relate to Defendant's need to indemnify Plaintiff pursuant to the Agreement and the commission Defendant earned as a result of the Agreement." *See Unison*, 789 F.3d at 818 (stating a court must "send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision" when that provision is broad (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008))). Based on that, she ordered the parties "to proceed to arbitration" and stayed this matter pending those proceedings.

Now before the Court is Berkshire's timely Statement of Objections (Filing No. 18) to the magistrate judge's ruling. *See* 28 U.S.C. § 636(b)(1) (giving a party fourteen days to object to a magistrate judge's determinations); Fed. R. Civ. P. 72 (same). It believes the magistrate judge's Memorandum and Order "misconstrued the allegations in" its complaint and "incorrectly concluded the arbitration provision is susceptible to multiple interpretations." Berkshire asserts those purported "factual and legal errors [] warrant sustaining [its] objections." Messer-Bowers avers (Filing No. 19) that Berkshire fails to demonstrate the magistrate judge's determination was "clearly erroneous or contrary to law."

As the Court has noted before, some uncertainty exists "about the proper standard of review" on an objection to a magistrate judge's ruling on a motion to compel arbitration. *All. Grp., Inc. v. Zurich Am. Ins. Co.*, No. 8:21CV188, 2021 WL 5325883, at *1 n.1 (D. Neb. Nov. 16, 2021); *see also V.I. Water and Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133-34 (3d Cir. 2014) (unpublished) (concluding a motion to compel arbitration was nondispositive); *Vernon v. Qwest Comms. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1140-41 (D. Colo. Mar. 8, 2012) (noting that "courts are divided on whether motions to compel arbitration are dispositive"). This Court treats such motions as non-dispositive. *See All. Grp.*, 2021 WL 5325883, at *1 n.1; *Skalka v. Charles Schwab & Co.*, No. 8:24CV158, 2025 WL 1114861, at * (D. Neb. Apr. 15, 2025). That is especially appropriate here where the magistrate judge chose to stay, not dismiss, this matter. *See* 28 U.S.C. § 636(b)(1)(A) (noting a motion to "involuntarily dismiss an action" constitutes a dispositive matter); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (concluding a motion "to stay litigation pending the resolution of parallel arbitration proceedings").

Given that, the Court may reconsider the magistrate judge's Memorandum and Order if it has been shown to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed. R. Civ. P. 72(a). It only concludes a finding is clearly erroneous "if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if [the Court is] left with the definite and firm conviction that an error was made." *E&I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, 134 F.4th 504, 511 (8th Cir. 2025) (quoting *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013)). Courts in this circuit have found a magistrate judge's decision to be contrary to law if it fails "to apply or misapplies relevant statutes, case law or rules of procedure." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013) (quoting *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008)); *accord Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019).

Having carefully reviewed the record and the parties' arguments, the Court finds Berkshire's objections hold water. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). The magistrate judge's conclusion that the Agreement's arbitration provision is susceptible to any interpretation indicating the parties agreed to arbitrate a dispute like the one presented in this matter warrants reversal.

In the Court's view, the magistrate judge may have unduly relied on the Supreme Court's interpretation of a convoluted criminal statute in analyzing the meaning of the Agreement's arbitration provision. *See Pulsifer v. United States*, 601 U.S. 124, 133-41 (2024) (applying cannons of statutory interpretation to determine the meaning of the phrase "the defendant does not have A, B, and C"). The scope of an arbitration agreement should be determined, "as with any other contract," by discerning the "parties' intentions." *Catamaran Corp. v. Towncrest Pharm.*, 946 F.3d 1020, 1023 (8th Cir. 2020) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)); s*ee also Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) (stating the interpretation of an arbitration agreement is generally governed by the Federal Arbitration Act ("FAA") and "the goal of [that law] is to enforce the agreement of the parties"). To that end, "courts [] must 'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen*, 559 U.S. at 682 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

Here, a faithful application of contract-interpretation principles indicates the parties exercised their ability "to limit the issues" subject to arbitration. *Id.* at 683. The Court agrees with Berkshire that Messer-Bowers's interpretation of the arbitration provision would render the Agreement's language superfluous. Specifically, if the parties did not intend to limit the arbitrable issues, the clause "and related to the amount of commission or other monies owed to [Messer-Bowers] by [Berkshire]" would be

rendered meaningless. *See Harris v. The Epoch Group, LC*, 357 F.3d 822, 825 (8th Cir. 2004) (explaining "a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous" (quoting *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000))). And while the Eighth Circuit has said the court need not narrowly interpret an agreement "[w]here the most natural reading of the text suggests a duplicative emphasis on capaciousness," there is no sign of that here. *JES Farm P'ship v. Indigo Ag Inc.*, 116 F.4th 733, 737 (8th Cir. 2024). The Court therefore concludes the arbitration provision is a narrow one, requiring arbitration only of disputes that both arise out of the Agreement "and relate[] to the amount of commission or other monies owed to" Messer-Bowers. *See Meierhenry Sargent LLP v. Williams*, 915 F.3d 507, 510-11 (8th Cir. 2019) (finding an arbitration agreement was narrow because it required arbitration "only of disagreements about the termination fee"); *Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 115 (2d Cir. 2023) (defining a narrow arbitration clause as one which "limits arbitration to specific types of disputes" (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998))).

Because the Agreement's arbitration provision is narrow, the next step is to "determine whether the [provision], reasonably read, 'covers the disputes at hand.'" *Meierhenry Sargent*, 915 F.3d at 510-11 (quoting *Lipton-U. City, LLC v. Shurgard Storage Ctrs., Inc.*, 454 F.3d 934, 937 (8th Cir. 2006)). It does not. Contrary to the magistrate judge's findings, a plain reading of the complaint demonstrates that Berkshire does not assert any claim for relief based on the commissions paid to Messer-Bowers. The $1,050,000 in damages it seeks is limited to the amount paid to Don's Doors for which Berkshire believes it should be indemnified under the Agreement. Nor does the dispute relate in any other way to "monies owed" to Messer-Bowers.

7

In sum, the Court agrees with Berkshire that the magistrate judge's decision was clearly erroneous and contrary to law. Because the magistrate judge erred in granting Messer-Bowers's motion to compel arbitration,

IT IS ORDERED:

1. Plaintiff Berkshire Hathaway Homestate Insurance Company's objections (Filing No. 18) are sustained.
2. The magistrate judge's Memorandum and Order (Filing No. 17) is reversed.
3. Defendant Messer-Bowers Company's motion to compel arbitration (Filing No. 7) is denied.
4. The stay in this matter is lifted.

Dated this 5th day of June 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge